**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Empire Fire and Marine Insurance Company, | No. CV-17-02159-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Sean Edward Patton, *et al.*, | |
| Defendants. | |

At issue is a choice of law dispute. Plaintiffs Empire Fire and Marine Insurance Company ("Empire") filed a choice of law brief (Doc. 26), to which Defendant Neetan Mandalia filed a response (Doc. 29). Defendant also filed a choice of law brief (Doc. 27), to which Plaintiff filed a response (Doc. 28). The Court held oral argument on the choice of law issue on April 24, 2018. (Doc. 41.)

**I.    FACTUAL BACKGROUND**

On March 16, 2015, Defendant Sean Patton rented a car from Enterprise Rent-a-Car Company ("Enterprise") at its Indio, California location. (Doc. 1-1, Rental Agreement). Under the terms of the Rental Agreement, use of the car was limited to California. (Rental Agreement at 1). Patton signed the Rental Agreement even though he intended to drive the car to Arizona to visit his girlfriend. (Doc 26-2, Patton Dep. at 93.) Patton claims he did not notice the provision that limited use of the car to California. (Doc. 26-2 at 93.) Patton also opted to purchase separate supplemental liability protection ("SLP") with his rental. (Rental Agreement at 1.) That policy provided coverage by

Plaintiff Empire, and some of its terms were included in paragraph 17 of Enterprise's standard rental agreement. (Rental Agreement at 6.)

After renting the car in Indio, Patton drove to Phoenix where he met with his girlfriend. (Patton Dep. at 14.) The two went to a bar and afterwards were driving from Tempe to Phoenix when they got into an argument. (Patton Dep. at 56–57.) Having pulled the car over, Patton and his girlfriend were arguing loudly when Patton noticed a group of people in a nearby parking lot pointing and laughing at them. (Patton Dep. at 57.) Patton testified that he drove his car toward the group in order to confront them, but lost control of the rental car and hit Mandalia, who was walking in the parking lot. (Patton Dep. at 64–69.) Patton later pleaded guilty to aggravated assault. (Doc. 1-4.) Defendant Mandalia sued Patton for the assault in state court. (Doc. 1-5.)

Before this Court, Plaintiff seeks declaratory relief in the form of a determination that the SLP does not insure Patton against Mandalia's claim. (Doc. 26 at 2.) On the merits, Plaintiff will argue that the SLP does not cover injuries arising out of "illegal or reckless use of the vehicle," "out of an accident which occurs when the insured is . . . under the influence of alcohol," or out of "use of the rental vehicle . . . outside the State of California." (Doc. 26 at 2–3.) But before it may make those arguments, Plaintiff, along with Mandalia, seeks a ruling on which state's law applies to the case. While Plaintiff advocates for the application of California law, Mandalia argues that Arizona law is more appropriate. (Docs. 26, 27.) The Court granted Plaintiff's Motion for Continuance of Dispositive Motion Deadline, giving parties another thirty days from the issuance of this choice of law decision to file any dispositive motions on the merits. (Doc. 49.)

## II. LEGAL STANDARD

When this Court has jurisdiction due to the diversity of the parties, it must apply Arizona's choice of law rules to decide which state's law should govern the dispute. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Arizona has adopted the conflict rules of the Restatement (Second) of Conflicts. *Bryant v. Silverman*, 703 P.2d 1190, 1191 (Ariz. 1985).

Under § 187 of the Restatement, in a contractual dispute, courts will apply the law of the state which parties have designated in their contract. Restatement (Second) of Conflicts § 187 (Am. Law Inst. 1971) ("Restatement"). That section requires courts to apply the law selected by parties "where it is established to the satisfaction of the forum that the parties have chosen the state," even if the contract does not expressly state such a designation but alludes to it. Restatement § 187 cmt. a. But "it does not suffice to demonstrate that the parties, if they had thought about the matter, would have wished to have the law of a particular state applied." Restatement § 187 cmt. a. If parties did make a designation in their contract, the Court will generally apply it except when their chosen state has "no substantial relationship to the parties of the transaction" or application of the chosen state's law would "be contrary to a fundamental policy of a state which has a materially greater interest . . . and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2)(a–b).

If parties do not specify a choice of law in their contract, the Restatement points courts toward § 188. Restatement § 188(a)(2). That section seeks to apply the "local law of the state which . . . has the most significant relationship to the transaction." Restatement § 188(a)(1). The "most significant relationship" determination is always made in accordance with broad factors outlined in § 6 of the Restatement. Those factors are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement § 6(2).

Section 188 pertains specifically to contractual disputes, and while it generally instructs courts to apply the broad principles of § 6, it also provides a list of contacts that should be considered in applying those broad principles, including:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement § 188(2)(a–e).

Section 193 deals even more specifically with insurance contracts. Restatement § 193. In cases focused on an insurance contract where the parties have not included a choice of law provision, a court may look at § 193 even before § 188. *Beckler v. State Farm Mut. Auto. Ins. Co.*, 987 P.2d 768, 775 n. 6 (Ariz. Ct. App. 1999) ("Most cases that look to § 188 for guidance do so only after determining that no principal location of insured risk exists under § 193.").

Section 193 focuses on which state "the parties understood was to be the principal location of the insured risk during the term of the policy." Restatement § 193. However, there is an exception when "with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties." Restatement § 193. Thus, § 193 requires a two-step inquiry. A state's law is appropriate only if parties understood that state to be the principal location of the insured risk and there is no other state with a more significant relationship to the transaction. *See Beckler*, 987 P.2d at 774.

Section 193 also acknowledges that "[t]here may be no principal location of the insured risk in the case of contracts for things . . . that are constantly on the move from state to state." Restatement § 193 cmt. a. When that is the case, § 188 governs the choice of law determination. Restatement § 193 cmt. a.

## IV. ANALYSIS

### A. Section 187

If Enterprise, rather than Empire, were the plaintiff in this action, § 187 of the Restatement would require the Court to apply California law, as designated in the Rental Agreement. But the Rental Agreement is not a contract between Empire and Patton, and therefore its choice of law is not binding on a dispute between Empire and Patton's victim Mandalia. Despite Plaintiff's argument that because paragraph 17 of the Rental Agreement "included terms applicable to Empire's SLP coverage that are in issue in this matter," those terms included in one paragraph of the Agreement do not transform Enterprise's contract into Empire's. (Doc. 26 at 6.) Without evidence of a valid contract entered into by Empire and Defendants, any choice of law clause in the Enterprise contract is not binding on this proceeding.

### B. Section 193

Without a valid choice of law provision, the Court turns to § 193 of the Restatement, as it deals specifically with insurance agreements. *See Beckler*, 987 P.2d at 775 n.6 (Ariz. App. 1999). That section requires the Court to apply "the law of the state where the parties understood was to be the principal location of the insured risk during the policy period." Restatement § 193 cmt. a. Thus, it requires the Court to discern whether Empire and Patton, parties to the SLP agreement, shared a common understanding of where the location of the insured risk was during the term of their insurance agreement.

Empire argues that the Rental Agreement clearly states the vehicle is to be used only in California, and thus any expected risk would come to pass in California. (Doc. 26 at 4.) But as discussed above, Empire was not a party to the Rental Agreement, and so the Court must determine whether Empire can fairly claim it had an understanding that, based on that contractual provision, the location of the risk was limited to California. Additionally muddling this analysis is the fact that Patton maintains he never read the provision of the Rental Agreement limiting his use of the vehicle to California. (Patton

Dep. at 92–93.) In fact, he always intended to use the car in Arizona, and thus argues that his expectation was that any risk would likely occur there, not California. (Doc. 29 at 3.) If the Court takes his understanding at face value, despite the existence of a written contract term that should have alerted him otherwise, there can be no mutual understanding of the location of risk.

Even given the fact that a party to a contract who failed to read the agreement is not excused from his obligations due to a failure to read, the Court cannot find that these parties reached a collective understanding of the principal location of the risk. *See Condos v. United Ben. Life Ins. Co. of Omaha*, 379 P.2d 129, 131 (Ariz. 1963) ("If a party in full possession of his mental faculties, able to read and understand an instrument . . . who admits that he did not take the trouble to read or examine it when presented to him for his signature, is permitted to set it aside on his oral testimony . . . written contracts of any nature are worthless."). As the Court discussed above, Empire was not a party to the Rental Agreement. It would be odd to conclude that the Agreement's choice of law provision is inapplicable because it was not part of a contract between the parties, but then find that the same contract represents a mutual understanding of those parties. *See Savoca Masonry Co. v. Homes & Son Const. Co.*, 542 P.2d 817, 821 (Ariz. 1975) (noting that an agreement requires a true "meeting of the minds"). This decision is in spite of the fact that Patton's failure to read a contract would not normally excuse him from his duties under said contract, and his failure to read here is irrelevant only because Empire was never a party to the Rental Agreement in the first place.[1]

### C. Section 188

Section 188 speaks directly to situations where there is an "absence of an effective choice of law by the parties," making it apt in this case.[2] The section requires the Court to

---

[1] Empire could require renters who opt into SLP coverage to sign a separate agreement in which Empire lays out its own choice of law preference or explicitly adopts the preference of Enterprise. But without evidence of any such master agreement in the record, the Court is unable to find that Empire and Patton shared an understanding of the principal location of the risk in this case.

[2] Empire argues that analysis under § 188 is appropriate because rental cars are "things . . . that are constantly on the move from state to state." (Doc. 28 at 5.) For items

determine which state "has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement § 188(1). But § 188 also provides a specific list of contacts that should be considered when the dispute is contractual in nature. At the outset, the Court clarifies that the "transaction" in this case is not the car accident in Arizona, where Patton struck Mandalia. Rather, the transaction over which Empire filed suit is the formation of an insurance relationship, which occurred when Patton elected SLP coverage in California. The Court now turns to the specific contacts outlined in § 188 in order to determine whether California indeed has the most significant relationship to that transaction.

First, the Court considers the place of contracting, which was undisputedly in California. (Rental Agreement at 1.) Next, the place of negotiation was also California. (Rental Agreement at 1.) The place of performance is less clear, as the contract was entered into in California, but Patton's continued use of the car in Arizona implicated the Agreement. The location of the subject matter of the contract is equally unhelpful, as the rental car moved across state lines. Finally, Patton is a California resident. (Patton Dep. at 8.) Empire is a Nebraska corporation with a principal place of business in Illinois, but because neither party advocates for the application of the law of those states, Empire's domicile is largely irrelevant. (Doc. 26 at 5.) On balance, the factors of § 188 weigh in favor of the application of California law. And while Mandalia points out that Arizona has a special interest in litigation where a victim was injured in Arizona, the Court has already acknowledged that the car accident is not the transaction at issue between these two parties. (Doc. 27 at 6.) Arizona has little interest in a contractual dispute where the contract was executed in California and neither party to the contract is an Arizona

---

like that, the Restatement says that "the location of the risk can play little role in the determination of the applicable law" and instead choice of law "must be determined in accordance with the principles set forth in the rule of § 188." Restatement § 193 cmt. a. It is irrelevant whether the Court reaches § 188 because comment (a) of § 193 mandates it or simply because it is the next place to turn after failing to reach a conclusion under § 193.

resident.

## V. CONCLUSION

Given that Plaintiff was not a party to the Rental Agreement, the parties before the Court are not bound by the choice of law provision in that contract. Neither can the Court determine that Plaintiff and Patton had a mutual understanding of the principal location of risk under § 193. Nonetheless, the factors in § 6 and § 188 weigh in favor of applying California law.

**IT IS THEREFORE ORDERED** that this Court shall apply California law in this case.

**IT IS FURTHER ORDERED** that any dispositive motions shall be filed within 30 days of the issuance of this order, as required by the Court's November 14, 2018 Order. (Doc. 49.)

Dated this 26th day of November, 2018.

Honorable John J. Tuchi
United States District Judge