**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Empire Fire and Marine Insurance Company, | No. CV-17-02159-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Sean Edward Patton, *et al.*, | |
| Defendants. | |

At issue is Plaintiff's Motion for Summary Judgment (Doc. 56, MSJ), supported by Plaintiff's Statement of Facts (Doc. 57, PSOF), to which Defendant Neetan Mandalia filed a Response (Doc. 58, Resp.) and responsive Statement of Facts (Doc. 59, DSOF), and Plaintiff filed a Reply (Doc. 61, Reply). For the reasons that follow, the Court grants Plaintiff's Motion.

**I.    BACKGROUND**

   **A.    The SLP policy with Empire**

On March 16, 2015, Defendant Sean Patton ("Patton") rented a car from Enterprise Rent-a-Car Company ("Enterprise") at its Indio, California location. (PSOF, Ex. 2-A.) Patton signed a four-page rental agreement with Enterprise. (PSOF, Ex. 2-A.) Page one contains the bolded and capitalized headline **ACKNOWLEDGMENT OF THE ENTIRE AGREEMENT, WHICH CONSISTS OF PAGES 1 THROUGH 4**. Below is smaller capitalized print that states "I HAVE READ AND AGREE TO THE TERMS AND

CONDITIONS ON PAGES 1 THROUGH 4." Patton signed underneath this. (PSOF, Ex. 2-A.)

On its third page, the rental agreement contains a bolded and underlined heading "**<u>Limits on Use and Termination of Right to Use</u>**." Directly underneath is the following:

> Renter agrees to the following limits on use:
>
> . . .
>
> (4) Vehicle shall not be used for: any illegal purposes; in any illegal or reckless manner; in a race or speed contest; or to tow or push anything.
>
> . . .
>
> (7) Vehicle shall not be driven by any person impaired by the use of alcohol, narcotics, intoxicants, or drugs, used with or without a prescription.
>
> . . .
>
> (9) Vehicle shall not be driven or taken outside the states authorized on Page 1.

The center of page one contained the following in all capitals: "PERMISSION GRANTED TO OPERATE VEHICLE IN THE STATE OF RENTAL AND THE FOLLOWING STATE(S): CA ONLY." (PSOF, Ex. 2-A.)

Patton also elected to purchase separate supplemental liability protection ("SLP") provided by Plaintiff Empire Fire and Marine Insurance Company ("Empire"). (PSOF, Ex. 2-A.) He did so by initialing the following, on page one of the Enterprise rental agreement: "**RENTER ACCEPTS OPTIONAL SUPPLEMENTAL LIABILITY PROTECTION (SLP) AT FEE SHOW IN COLUMN TO RIGHT. SEE PARAGRAPH 17**."

Paragraph 17 is located on page three of the rental agreement and provides a summary of both the SLP coverage and its exclusions. Under the headline **<u>Optional Supplemental Liability Protection</u>**, the agreement says "**THIS IS A SUMMARY ONLY**

**AND IS SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE SLP POLICY. UPON REQUEST, A COPY OF THE POLICY IS AVAILABLE FOR REVIEW.**" Paragraph 17 also contains the bolded and underlined headings **<u>SLP Benefits</u>** and **<u>SLP Exclusions</u>**. The latter directs the renter to refer to the SLP for a complete list of exclusions. However, it lists, among others, the following "**key exclusions**" from coverage:

>(a) Loss arising out of an accident which occurs while Renter . . . is under the influence of alcohol or drugs, or other substances unless prescribed by a physician;
>
>…
>
>(j) Loss arising out of the use of Vehicle when such use is otherwise in violation of the terms and conditions of the Rental Agreement.

### B. The SLP policy with Empire

The SLP is a separate document.[1] The declarations page lists "Empire Fire and Marine Insurance Company" as the insurer and "ENTERPRISE HOLDINGS INC" as the policyholder. (PSOF, Ex. 2-C at 3.) Section I of the SLP provisions contains a heading titled **EXCLUSIONS.** (PSOF, Ex. 2-C at 7.) Underneath, it states:

>In addition to the exclusions contained in the "underlying insurance", this insurance does not apply to the following:
>
>(1) Loss arising out of an "accident" which occurs while the "insured" is under the influence of alcohol or drugs, or other substances unless prescribed by a physician.
>
>(2) Loss arising out of the use of a "rental vehicle" when such use is in violation of the terms and conditions of the "rental agreement."

### C. The incident with Mandalia and subsequent litigation

---

[1] Mandalia maintains that Patton did not receive a copy of the SLP. However, as addressed below, this fact does not affect the rights and liabilities of the parties in this dispute.

After Patton signed the rental agreement and elected to purchase the SLP policy, he drove from Indio to Arizona. He met his girlfriend in Tempe and the two went to a bar. After leaving the bar, they drove off in the rental car. A heated argument ensued, and Patton pulled the car over in a parking lot. He then noticed a group of people pointing and laughing at them. Patton drove toward the group to confront them and hit Defendant Neetan Mandalia ("Mandalia") with the car. (PSOF ¶ 24; DSOF ¶ 24.) The police report states that at 2:39 a.m., after Patton struck Mandalia, a breathalyzer showed Patton's blood alcohol content ("BAC") to be 0.098. (PSOF ¶ 25; DSOF ¶ 25.) Police later drew his blood at 3:49 a.m. and 4:08 a.m., revealing a BAC of 0.081 and 0.073, respectively. (PSOF ¶ 26; DSOF ¶ 26.) Patton later pled guilty to aggravated assault. (PSOF, Ex. 4.)

Mandalia then sued Patton for assault in state court. (Compl, Ex. 5) In that action, Empire denied coverage to Patton on the grounds that the incident occurred (1) while Patton was under the influence, and (2) while Patton was otherwise in violation of the terms of the Enterprise rental agreement. (PSOF ¶ 37; DSOF ¶ 37.) In a settlement agreement between Patton and Mandalia, Patton assigned any perceived rights against Empire to Mandalia. (PSOF ¶ 38; DSOF ¶ 38.)

At that point, Empire brought the present action, seeking a declaration that it is not liable to Mandalia for the same reasons that it denied Patton coverage in the state court action, namely, that Patton was under the influence and was otherwise in violation of the terms of the rental agreement when he hit Mandalia.

Earlier in this case, the Court determined that California law applies to the interpretation of the SLP and the rental agreement and to the issue of whether the loss incurred by Mandalia is covered under the terms of the Empire policy. (Doc. 53.) Plaintiff now moves for summary judgment, arguing that it is under no obligation to indemnify Patton because there remains no genuine dispute of fact that Patton triggered several exclusions under the SLP.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

. . . .

. . . .

. . . .

## III. ANALYSIS

### A. The Court may consider the copy of the rental agreement attached to Plaintiff's motion.

As a preliminary matter, Mandalia argues that the copy of the rental agreement and the declaration of Patricia Kelly attached to Plaintiff's Statement of Facts are late disclosures in violation of this Court's Mandatory Initial Discovery Pilot Project and Rule 26. Mandalia argues that the disclosures prejudice him and requests that Plaintiff be precluded from using them under Rule 37(c).

The Court rejects Mandalia's argument. First, Plaintiff did not disclose the rental agreement late. It attached a copy to the Complaint. (Doc 1. Ex. 2.) Although fuzzy and somewhat difficult to read, Mandalia had in his possession a copy since the beginning of this case. The third page, which contained the summary of the SLP exclusions, is in dark ink and is legible. (*See* Doc 1. Ex. 2.) Further, the copy's poor quality does not change the underlying information therein. Patton signed a hard copy when he rented the car at Enterprise, acknowledging that he read and understood all four pages. As Plaintiff notes, "Patton did not testify he was provided or signed the lower quality copy" when he rented the car. (MSJ at 8, referring to Doc. 1, Ex. 1.)

Under Rule 37(c), a party who fails to provide information or the identity of a witness is precluded from using that information or witness "unless the failure was substantially justified or is harmless." Here, Plaintiff's failure to provide a clearer copy was harmless because of the reasons stated above: Mandalia had a copy that was legible, albeit poor quality; the later disclosure of the clearer copy does not change the historical fact that Patton signed an original hard copy; and Mandalia had the clearer copy in his possession with time to rely on it in his own Response.

### B. Empire's SLP policy is an excess policy.

The Court finds that the SLP is an excess policy and not a primary, or underlying, policy. In his Response, Mandalia argues that a question of fact exists as to the nature of the SLP policy—whether it is a primary or excess policy. To qualify as an excess policy,

there must also be an underlying policy that provides the minimum coverage mandated by state law. *See Hertz Corp. v. Home Ins. Co.*, 14 Cal. App. 4th 1071, 1078 (1993). The court in *Hertz* set forth three additional requirements. First, the excess policy must identify the primary policy. *Id.* at 1079. Second, it must specify that the primary coverage be maintained during the excess policy's coverage period. *Id.* And third, the Court must determine whether the identified primary policy is in fact underlying insurance. *Id.*

The SLP satisfies all three requirements. First, the SLP identifies the underlying coverage. The first section of the SLP states that the policy provides "excess auto liability insurance" and will indemnify the insured for loss "in excess of the 'underlying insurance.'" (PSOF, Ex. 2-C at 7.) It defines "underlying insurance" as "the policy or policies or insurance, bond, cash deposit, or self insurance, maintained by the policyholder or insured which satisfy at least the Minimum Financial Responsibility requirements of the state where the accident occurred." (PSOF, Ex. 2-C at 12.) The declarations page lists the policyholder as Enterprise Holdings, Inc. (PSOF, Ex. 2-C at 3.)

This is corroborated by the rental agreement, which says the owner is Enterprise Rent-A-Car. (PSOF, Ex. 2-A at 1.) Paragraph nine of the rental agreement states that the owner "complies with applicable motor vehicle financial responsibility laws as a state certified self-insurer, bondholder, or cash depositor." (PSOF, Ex. 2-A at 7.) Under certain conditions, the owner will be "obligated to extend its motor vehicle financial responsibility to Renter . . . limited to the applicable state minimum financial responsibility amounts." Taken together, the SLP identifies Enterprise as providing the state required minimum amount of liability coverage, *i.e.*, primary coverage.

Second, the SLP indisputably requires that underlying insurance be maintained for the excess policy to be effective. (PSOF, Ex. 2-A at 10.)

Finally, the Court easily determines that the underlying policy provided by Enterprise is a primary policy. Paragraph nine of the rental agreement makes clear that, in the event of a third party's loss, the owner (Enterprise) will satisfy the minimum financial responsibility as required by state law. Where two or more policies apply to the same car

out of which an event of loss occurs, "the insurance afforded by that policy in which the motor vehicle is described . . . as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." Cal. Ins. Code § 11580.9 (2019). Further, Enterprise tendered the applicable limits of that responsibility when it deposited for Patton $15,000 with the Department of Motor Vehicles. (PSOF, Ex. 2-B.)

Accordingly, the Court finds that the SLP with Empire is an excess policy and that no reasonable juror could find otherwise.

### C. Empire can enforce the exclusions as listed in the rental agreement and the SLP policy.

Plaintiff moves for summary judgment on the grounds that Empire is excused from providing coverage as a matter of law because Patton triggered multiple exclusions. It argues that at the time of the incident, Patton was under the influence of alcohol and otherwise in violation of the terms of the rental agreement. Both are exclusions listed on the face of the rental agreement that Patton signed and in the SLP policy itself. Patton's alleged violations of the terms and conditions of the rental agreement include driving the car outside of California; using the car for illegal purposes (committing an aggravated assault on Mandalia); and driving while under the influence of alcohol.

Mandalia argues that Patton and Empire were not in privity of contract with respect to the rental agreement; therefore, Empire cannot enforce the terms of the rental agreement. He further argues that the SLP cannot provide a basis for excluding coverage because Patton never received a copy of the SLP policy. Mandalia also claims that the exclusions listed in the rental agreement are unenforceable because they are not conspicuous, plain, and clear.

#### 1. Patton elected to purchase the excess policy with Empire by initialing the Enterprise rental agreement.

Mandalia cites no cases in the rental car context to support his privity argument. The only case cited, *Century Indemnity Co. v. Superior Court*, is inapplicable. *Century* involved a statute of limitations issue in a claim for contribution among several insurance companies

who covered the same insured. 50 Cal. App. 4th 1115, 1118 (1996). The insured had entered into separate and distinct insurance contracts with three different insurance companies. *Id.* When a claim arose, Scottsdale Insurance Company defended the action for the insured. *Id.* Years later, Scottsdale sought contribution from Century for fees associated with litigating the dispute. *Id.* The court found that, although Century's obligation to Scottsdale "could be said to ultimately or remotely stem from Century's written contract of insurance with [the insured], it is not one *immediately resting in or growing out of* that written instrument." *Id.* at 1123 (emphasis in original).

Here, Patton's rights and exclusions under the SLP do "immediately rest in or grow out of" a written instrument: the rental agreement. Patton elected to purchase the SLP policy by signing and initialing the *rental agreement*. The rental agreement listed a summary of the rights and exclusions under the SLP, including the exclusions that form the basis of this declaratory action. The contractual relationship between Patton and Empire is directly connected to the rental agreement, and the rental agreement is the genesis of that relationship.

In his Response, Mandalia cites to language in this Court's previous Order on a choice of law issue. (Resp. at 6.) That Order stated that "[w]ithout evidence of a valid contract entered into by Empire and Defendants, *any choice of law clause in* the Enterprise contract is not binding on this proceeding." (Doc. 53 at 5 (emphasis added).) Mandalia omitted the portion in italics, arguing that, under the doctrine of the law of the case, Empire can enforce no portion of the rental agreement whatsoever. This not only misstates the nature of the Court's Order, but it supports the proposition that Empire *can* enforce the exclusions as listed in the rental agreement. The Order stated that paragraph 17's inclusion of SLP terms and exclusions does not transform the *entire* contract into Empire's. The implication is that while Empire cannot enforce all tangential aspects of the rental agreement, including the choice of law provision in paragraph 23, it can enforce the specific exclusions in paragraph 17.

Mandalia also quotes "Empire was not a party to the Rental Agreement" from the Order to argue that Empire cannot enforce the SLP exclusions listed in the rental agreement. Again, this language was used in the context of a narrower choice of law problem. The Order concluded that, because Empire was not a party to the rental agreement, Empire and Patton had no meeting of the minds with *respect to the principal location of the insured risk*. In other words, Empire and Patton did not mutually understand that California law would apply in the event of loss.

The SLP exclusions do not suffer from this same lack of mutual assent. Patton knew or represented that he knew the basic SLP exclusions. He signed the rental agreement stating that he read and understood all four pages and initialed the box that specifically referred him to paragraph 17, which provided a summary of the SLP exclusions. Empire undoubtedly knew and understood the SLP exclusions as summarized in the rental agreement. The rights and exclusions are the core of the SLP policy. A choice of law provision is not. The Court's choice of law analysis under the Restatement does not apply wholesale to the issue of whether Empire can enforce the SLP exclusions.

**2.  The SLP policy incorporates the rental agreement by reference.**

Importantly, Plaintiff is not relying on enforcing solely the rental agreement. Rather, it can enforce the SLP, which incorporates by reference the terms of the rental agreement. Incorporation by reference is a well-settled aspect of California contract interpretation. To have a valid incorporation by reference, the incorporated document must exist at the time of incorporation, and its terms must be known or easily available to the contracting parties. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017). The incorporated document and the contract are then treated as a single document. *Id.*

In *Hertz*, a renter's excess policy stated that it was "subject to the same 'terms, conditions and exclusions' contained in the [rental agreement]." *Hertz*, 14 Cal. App. 4th at 1081. The rental agreement prohibited use of the car while under the influence of alcohol or drugs. *Id.* The California appellate court found that the excess policy "clearly"

incorporated by reference the rental agreement, and more specifically, "amply" incorporated the agreement's driving under the influence clause. *Id.* at 1082.

Here, both the SLP and the rental agreement existed at the time Patton signed the rental agreement. The terms of the rental agreement, the incorporated document, were known to Patton, as demonstrated by his signature and initials. The SLP excludes from coverage "loss arising out of the use of a rental vehicle when such use is in violation of the terms and conditions of the rental agreement." The SLP defines the rental agreement as "the rental contract by which the 'rentee' rents or leases the rental vehicle." This rental contract is Patton's rental agreement with Enterprise, as Enterprise is listed as the policyholder on the SLP and Patton signed a rental agreement with Enterprise. The terms and conditions on page two of the rental agreement prohibit driving under the influence, using the car for illegal purposes, and driving outside of California. Altogether, the SLP adequately incorporated the terms of the rental agreement by reference.

The fact that Patton did not physically receive a copy of the SLP policy does not change either Patton's or Empire's rights under the SLP. A district court interpreting California law has permitted the excess insurer to enforce an exclusion under an excess policy even though the renter did not receive a copy of it. *See Empire Fire & Marine Ins. Co. v. Domingo*, 2007 WL 4191910, at *7 (N.D. Cal. Nov. 26, 2007). *Domingo* involved a near-identical rental agreement and SLP policy. An additional designated driver got into an accident while she was in violation of the terms of the rental agreement. The court found that, notwithstanding the fact that neither the renter nor the additional driver had received a copy of the excess policy, the original renter signed and initialed the rental agreement, which contained the relevant SLP exclusion. *Id.* at *6 n.9.[2]

Finally, to accept Mandalia's contention that Empire cannot enforce the exclusions—whether as listed in the rental agreement or the SLP—would effectively nullify any excess policy which the insured opted into through initialing a rental car

---

[2] Further, here, the rental agreement stated that Enterprise would provide Patton a copy of the entire SLP policy if requested. That Patton did not ask cannot now be used as a shield against Empire.

- 11 -

1 agreement. The Court cannot accept that proposition. California courts have allowed the excess insurer to enforce the exclusions against the insured (and have surely allowed the insured to enforce the terms of coverage against the insurer), and have done so under strikingly similar facts to this case. *See Hertz*, 14 Cal. App. 4th at 1080–82; *Domingo*, 2007 WL 4191910, at *7.

### 3. The exclusions were conspicuous, plain, and clear.

California courts will not enforce an exclusion in an insurance agreement unless it is conspicuous, plain, and clear. *Steven v. Fid. & Cas. Co.*, 377 P.2d 284, 294 (1962). Conspicuous relates to the placement of the exclusion. Plain and clear relates to the substance of the exclusion. *Ponder v. Blue Cross of S. Cal.*, 145 Cal. App. 3d 709, 719 (1983). "The substance of the exclusion must be stated in words that convey the proper meaning to persons expected to read the contract." *Id.*

Relying on *Ponder*, Mandalia argues that the SLP exclusions in paragraph 17 of the rental agreement fail to meet this standard. The court in that case held that a particular exclusion was not conspicuous, plain, and clear. *Id.* at 728. While the *Ponder* insurance contract did contain a similar number and density of words as the rental agreement, it is easily distinguishable. The exclusion at issue, temporomandibular joint syndrome—a disorder associated with lock-jaw—was listed under a small sub-heading called "dental care." *Id.* at 722. No special bolding or capitalizing called attention to the particular exclusion. The court found it unreasonable to place a syndrome involving complex joint, skull, and muscular pain in a section typically associated with tooth care. *Id.* at 723. This unexpectedness, rather than "density of verbiage alone," made it inconspicuous. *Id.* at 722. Neither was "temporomandibular joint syndrome" plain and clear. Mere precision is not dispositive. Rather, the exclusion must be "comprehensible to lay persons" and "ordinarily used in the common speech." *Id.* at 723–25.

Unlike the *Ponder* contract, the SLP exclusions are as a matter of law conspicuously placed and are comprehensible to lay persons. Patton initialed next to the box stating that he was accepting "SUPPLEMENTAL LIABILITY PROTECTION (SLP)" and directing

him to "SEE PARAGRAPH 17." Paragraph 17 contains the bolded and underlined heading **SLP Exclusions**. The first "key exclusion" is "loss arising out of an accident which occurs while Renter . . . is under the influence of alcohol." The last is "loss arising out of the use of Vehicle when such use is otherwise in violation of the terms and conditions of the Rental Agreement." There is nothing unexpected, ambiguous, or technical about these terms. Ordinary persons of average intelligence would understand the meaning of them. Indeed, the court in *Domingo* found that the SLP exclusions in an almost-identical rental agreement were plain, clear, and conspicuous. *Domingo*, 2007 WL 4191910, at *6–*7.

### D. No reasonable juror could find that Patton's actions did not trigger the exclusions.

The following facts are undisputed. Patton elected to purchase an insurance policy with Empire by initialing the rental agreement with Enterprise. The rental agreement specifically stated that driving under the influence and using the car in violation of the terms and conditions of the rental agreement were excluded from SLP coverage. The terms and conditions of the rental agreement restricted use of the vehicle to California only, prohibited driving while intoxicated, and prohibited use of the vehicle for illegal purposes. Patton took the car to Arizona, drove it after consuming multiple alcoholic beverages, and used it to commit an aggravated assault on Mandalia.

Mandalia's last argument is that a question of fact exists as to whether Patton was "under the influence" within the meaning of the exclusion. He relies on the definition of "under the influence" used in the standard jury instructions in a California criminal prosecution for a felony DUI. (Doc. 58 at 10.) Plaintiff contends that the SLP is not limited to the criminal standard, but rather, the ordinary meaning of how the average person understands "under the influence."

The Court agrees with Plaintiff. Patton drove the vehicle after consuming multiple alcoholic beverages. His BAC shortly after striking Mandalia was 0.098. It was 0.081 over an hour after that. The California Vehicle Code makes it "unlawful for a person who has 0.08 percent of more, by weight, of alcohol in his or her blood to drive a vehicle." Cal.

Veh. Code § 23152(b) (2019). Likewise, in Arizona, it is unlawful for a person to drive a vehicle with a BAC of 0.08 or more. Ariz. Rev. Stat. ("A.R.S.") § 28-1381(A)(2) (2019). "When determining whether a particular policy provides a potential for coverage . . . we are guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, 900 P.2d 619, 627 (1995). The inquiry thus is whether any *reasonable* juror would find that, given these undisputed facts, that Patton was not under the influence of alcohol. The Court answers in the negative.

Even if the Court agreed that the meaning of "under the influence" is a question for the jury, it is undisputed that Patton violated two other conditions of the rental agreement. In addition to prohibiting driving under the influence, the rental agreement also restricted use of the vehicle to California only and prohibited use of the vehicle for illegal purposes. As noted above, Patton took the car to Arizona and used it to commit an aggravated assault on Mandalia.

Defendant Mandalia has not raised a genuine dispute of material fact as to whether Empire's excess policy provides coverage for the loss incurred by Mandalia. Accordingly, the Court grants summary judgment in favor of Plaintiff Empire.

### E. Attorneys' Fees

Plaintiff argues that it is entitled to attorneys' fees under A.R.S. § 12-341.01. The Court agrees that Plaintiff is eligible for fees under § 12-341.01, which permits the Court to award reasonable fees to the prevailing party in a contract action.[3] Plaintiff has 21 days from the date of this Order to file its application demonstrating its entitlement to and reasonableness of its fees under LRCiv 54.2.

---

[3] The Court notes that, although California law governs the contract interpretation in this case, Arizona law governs the issue of attorneys' fees. No Arizona case directly addresses whether an award of attorneys' fees is substantive or procedural for choice of law purposes. If procedural, the law of the forum state, Arizona, would apply. If substantive, the Court finds that Arizona has a greater interest in applying its law because the attorneys on both sides are licensed and practicing in Arizona. Thus, under either alternative, the Court finds that Arizona law would apply.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion for Summary Judgment (Doc. 56).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment in favor of Plaintiff and to close this case.

**IT IS FURTHER ORDERED** that Plaintiff has 21 days from this Order to file its fee application in compliance with LRCiv 54.2.

Dated this 11th day of September, 2019.

Honorable John J. Tuchi
United States District Judge